UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

Joshua Adam Schulte,

Petitioner,

−v−

William Barr,

Respondent.

Case No. _____

# PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

## NOTICE

See attachment for application to proceed in forma pauperis. Note that the Prisoner Litigation Reform Act (PLRA) does not apply to a petition for a writ of habeas corpus and therefore the petitioner need not sign a prisoner authorization form or pay any filing fee, see, e.g., Reyes v. Keane, 90 F.3d 676, 678 (2d Cir. 1996) ("[W]e conclude that Congress did not intend the PLRA to apply to petitions for a writ of habeas corpus"); Davis v. Fechtel, 150 F.3d 486 (5th Cir. 1998) ("Prison Litigation Reform Act's filing fee obligations do not apply to 2241 habeas proceeding.").

Since this petition challenges rulings made by District Judge Paul A. Crotty, the Petitioner requests assignment of this petition to a different judge based on 28 U.S.C. § 144.

ii

# PETITION PRELIMINARY INFORMATION[1]

## Personal Information

1. Full name and prisoner id: Joshua Adam Schulte #79471054
2. Place of Confinement: Metropolitan Correctional Center (MCC), 150 Park Row, NY, NY 10007
3. Currently held on orders by: federal authorities
4. Currently held as: a pretrial detainee pending trial

## Decision or Action Challenged

5. This petition challenges: pretrial detention
6. Information on decision challenged

   Name and location of Court: U.S. District Court for the S.D.NY

   Case number: 17-Cr-548(PAC)

   Decision Challenged: Revocation of bail, Dkt# 26, 1/17/18

## Your earlier Challenges of the Decision

7. Appeal

   Name and location of Court: U.S. Second Circuit Court of Appeals

   Case number: 18-145

   Decision: Order of revocation affirmed, Dkt#34, 3/6/18

8. Application to proceed in forma pauperis

   Petitioner moves for leave to proceed in forma pauperis. See attached affidavit.

   Joshua Alan Schulte

   Josh Schulte   10/11/20

1 Information replicated from form AO 242 (Rev. 01/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

iii

# TABLE OF CONTENTS

I. TABLE OF AUTHORITIES.................................... iv
II. STATEMENT OF JURISDICTION...................... 1
III. STATEMENT OF THE ISSUE...................... 4
IV. STATEMENT OF THE CASE...................... 4
   A. Relevant Background...................... 5
   B. Order Setting Conditions of Release...................... 9
V. SUMMARY OF ARGUMENT...................... 10
VI. ARGUMENT...................... 12
   A. The District Court imposed overbroad, excessive,
and Unconstitutional conditions of release that cannot legally
be enforced...................... 12
     1. Violation of 1st Amendment and Supreme Court precedent... 13
     2. Violation of 'Least Restrictive Clause'...................... 18
     3. Violation of 4th, 5th, 6th, and 8th Amendments...... 21
     4. Gov't may not suppress lawful speech to suppress unlawful... 25
   B. The District Court's revocation of bail was Unconstitutional... 27
     1. Unconstitutional conditions of release are unenforceable... 28
     2. The District Court expanded release conditions ex post facto. 29
     3. Pretrial Services consented to third party use of Internet... 31
     4. District Court's reliance on Virginia arrest was improper... 33
VII. CONCLUSION...................... 35

iv.

# I. TABLE OF AUTHORITIES

## Cases

Ashcroft v. Free Speech Coalition,
   535 U.S. 234 (2002) . . . . . . . . . . . . . . . . . . . . . . . 25

Bartnicki v. Vopper,
   532 U.S. 514 (2001) . . . . . . . . . . . . . . . . . . . . 27

Berman v. United States,
   302 U.S. 211 (1937) . . . . . . . . . . . . . . . . . . . 3

Broadrick v. Oklahoma,
   413 U.S. 601 (1973) . . . . . . . . . . . . . . . . . 25

DiBella v. United States,
   369 U.S. 121 (1962) . . . . . . . . . . . . . . . . . 3

Flanagan v. United States,
   465 U.S. 259 (1984) . . . . . . . . . . . . . . . . . 3

Grady v. North Carolina,
   135 S. Ct. 1368 (2015) . . . . . . . . . . . . . . . . 11, 23

Hess v. Indiana,
   414 U.S. 105 (1973) . . . . . . . . . . . . . . . . . 27

Kingsley Int'l Pictures Corp. v. Regents of Univ. of N.Y.,
   360 U.S. 684 (1959) . . . . . . . . . . . . . . . . . 27

Packingham v. North Carolina,
   137 S. Ct. 1730 (2017) . . . . . . . . . . . . . . . . passim

Reno v. American Civil Liberties Union,
   521 U.S. 844 (1997) . . . . . . . . . . . . . . . . . 13

Riley v. California,
   573 U.S. 373 (2014) . . . . . . . . . . . . . . . . . 13

Thorne v. Warden, Brooklyn House of Detention for Men,
   479 F.2d 297 (2d Cir. 1973) . . . . . . . . . . . . . 2

V.

United States v. Betts,
 886 F.3d 198 (2d Cir. 2018) . . . . . . . . . . . . . . . .    18

United States v. Blair,
 933 F.3d 1271 (10th Cir. 2019) . . . . . . . . . . . . .    17

United States v. Browder,
 866 F.3d 504 (2d Cir. 2017) . . . . . . . . . . . . . . . .    26

United States v. Eaglin,
 913 F.3d 88 (2d Cir. 2019) . . . . . . . . . . . . . . . .    passim

United States v. Freeman,
 316 F.3d 386 (3d Cir. 2003) . . . . . . . . . . . . . . . .    17

United States v. Helmsley,
 864 F.2d 266 (2d Cir. 1988) . . . . . . . . . . . . . . . .    3

United States v. Holm,
 326 F.3d 872 (7th Cir. 2003) . . . . . . . . . . . . . . .    17

United States v. LaCoste,
 821 F.3d 1187 (9th Cir. 2016) . . . . . . . . . . . . . .    17

United States v. Myers,
 426 F.3d 117 (2d Cir. 2005) . . . . . . . . . . . . . . . .    19

United States v. Perazza-Mercado,
 553 F.3d 65 (1st Cir. 2009) . . . . . . . . . . . . . . . .    17

United States v. Peterson,
 248 F.3d 79 (2d Cir. 2001) . . . . . . . . . . . . . . . .    16

United States v. Sofsky,
 287 F.3d 122 (2d Cir. 2002) . . . . . . . . . . . . . . .    16

United States v. Wiedower,
 634 F.3d 490 (8th Cir. 2011) . . . . . . . . . . . . . . .    17

Ward v. Rock Against Racism,
 491 U.S. 781 (1989) . . . . . . . . . . . . . . . . . . . . . .    12

vi.

## Statutes

18 U.S.C. § 109 .................................... 2

18 U.S.C. § 3142 .................................. passim

18 U.S.C. § 3148 .................................. 27

18 U.S.C. § 3500 .................................. 8

18 U.S.C. § 3583 .................................. 19

18 U.S.C. § 401 .................................... 2

28 U.S.C. § 1291 .................................. 2

28 U.S.C. § 2241 .................................. 1, 4

28 U.S.C. § 2243 .................................. 1

## Constitutional Provisions

U.S. Const. Amend. I ............................ passim

U.S. Const. Amend. IV ........................... passim

U.S. Const. Amend. V ............................ 11, 21, 24, 35

U.S. Const. Amend. VI ........................... passim

U.S. Const. Amend. VIII ......................... 11, 21, 24, 35

1.

## II. STATEMENT OF JURISDICTION

The Court may entertain a petition for a writ of habeas corpus from a person in custody to challenge the legality of his detention on the grounds that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) The Court has the authority to review the petition and "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled [to such relief] 28 U.S.C. § 2243.

The Government tried Mr. Schulte for espionage in a 10-count indictment in the Southern District of New York during the month of March 2020. The result

2.

was a hung jury and mistrial — except convictions for contempt of court (18 U.S.C. § 401(3)) and making false statements (18 U.S.C. § 1001) that are pending Rule 29 dismissal. Normally, conviction moots pretrial habeas corpus petitions under 28 U.S.C. § 2241. See Thorne v. Warden, Brooklyn House of Detention for Men, 479 F.2d 297, 299 (2d Cir. 1973) ("Since [petitioner] is now held as a convicted defendant rather than merely on a criminal charge not yet brought to trial, the issue as to the legality of his continued pretrial detention has been mooted, and it therefore becomes unnecessary to resolve the constitutional issues presented."). However, due to the Finality Rule, there is no final judgment or sentence until the remaining counts to the indictment are retried. "Under 28 U.S.C. § 1291 appeal is allowed only 'from all final decisions of the district courts.'

3.

In a criminal case, as here, an appeal usually may be taken only after sentence has been imposed because that is the final judgment in such a case. Flanagan v. United States, 465 U.S. 259, 263 (1984); Berman v. United States, 302 U.S. 211, 212 (1937); The 'finality' rule has been the cornerstone of appellate jurisdiction from the earliest days of the Republic. See DiBella v. United States, 369 U.S. 121, 124 (1962)." United States v. Helmsley, 864 F.2d 266, 268 (2d Cir. 1988). Therefore, since there is no final judgment or sentence, the petitioner cannot yet appeal his conviction and has no other judicial remedy available to him — in fact, Mr. Schulte remains in custody as a pretrial detainee pending resolution of the remaining counts at a second trial. Finally, the District judge presiding over the criminal case retains authority to order Mr. Schulte remanded into federal custody for the

4.

Convictions should the court grant this writ.

## II. STATEMENT OF THE ISSUE

Whether a judge can impose the ban of the entire Internet and all electronic devices pretrial without stating on the record the necessity for such a ban or why less restrictive options were not even considered and then modify this ban to include third parties ex post facto and remand a Defendant.

## IV. STATEMENT OF THE CASE

Mr. Schulte petitions for a writ of habeas Corpus pursuant to 28 U.S.C. § 2241 regarding his indefinite pretrial incarceration at the Metropolitan Correctional Center (MCC) in United States v. Schulte, 17-cr-548 (PAC), pending trial in

5.

the United States District Court for the Southern District
of New York.

## A. Relevant Background

Mr. Schulte worked for the Central Intelligence Agency
and National Security Agency as a software engineer from 2010-
2016. He passed every polygraph examination including questions
related to major crimes and possession of child pornography. In
November 2016 Mr. Schulte moved to New York City to work
for Bloomberg as a Senior Software Engineer.

Following the Vault 7 Wikileaks on March 7th, 2017,
Mr. Schulte's New York City apartment was searched on March
13th and 14th. Mr. Schulte immediately began cooperating with
the Government to assist their investigation.

On August 24, 2017, despite continuing cooperation and
communication with AUSAs, Mr. Schulte was arrested by a gang

6.

of armed FBI agents regarding allegations of possession of child pornography. After arrest, Mr. Schulte was denied bail by a magistrate judge (Dkt. #4 transcript).

On September 13, 2017, District Judge Paul A. Crotty reversed the Magistrate's decision, and released Mr. Schulte on the harshest pretrial conditions of 24-hour house incarceration and the ban of all electronic devices and the Internet. The Government unsuccessfully raised the issue of an alleged Virginia sexual assault and potential charges (Dkt. #12 transcript).

On September 28, 2017, Mr. Schulte's roommate submitted a letter to pretrial services requesting permission to use a laptop and the Internet in the apartment. Pretrial ^Services consented and concurred that Mr. Schulte's roommate could access the Internet and tend to Mr. Schulte's affairs on his behalf.

On November 8, 2017, Mr. Schulte, through his counsel,

7.

requested a modification to the bail order that would permit

Mr. Schulte monitored Internet access. That request was denied

without prejudice so that counsel could raise the issue through

motion practice (Dkt. #16 transcript).

On December 6, 2017, despite strict house incarceration,

Mr. Schulte was arrested as a "fugitive" for allegedly sexually

assaulting his girlfriend in 2015; these Virginia charges were not

brought by any victim, but were the result of a warrantless search

of the Petitioner's cell phone. The next day, the government

requested revocation of Mr. Schulte's bail due to this arrest and

new allegations that he accessed the Internet (Dkt. #21 bail letter).

On December 14, 2017, Mr. Schulte consented to

remand, without prejudice, so that he could be extradited to Virginia

to be arraigned on sexual assault charges the following week.

However, immediately following remand, Virginia cancelled the

8.

arraignment, dropped its writ, and filed a detainer as the entire

goal of these charades was to detain Mr. Schulte indefinitely.

18 U.S.C. § 3500 materials released to the Petitioner in 2020

showed FBI malfeasance as they directed the Virginia County to

convene a grand jury despite the Virginia lead detective's statement

that he had no crime to prosecute; to this date Mr. Schulte has

never been formally charged (Dkt. #22 Order, Dkt. #24 transcript)

On January 8, 2018, Mr. Schulte argued for release. Mr.

Schulte's counsel presented evidence that all Internet connections

corresponded to time(s) when Mr. Schulte's roommate was present

in the apartment (and ultimately using the laptop) and evidence that

pretrial services consented to the roommate's use of the Internet

(and official September 28th request letter) on Mr. Schulte's behalf

Despite counsel's urging, the court did not consult with pretrial

services, and instead, found, ipse dixit, that Mr. Schulte

9.

"Violated the terms of the release conditions by engaging in having his roommate access the computers using very sophisticated methodology." (Dkt. #29, transcript p. 16). The Court also relied on the Virginia arrest to find that there was "clear danger." Id. (Dkt. #26 Order).

On March 6, 2018, the Second Circuit Court of Appeals affirmed Judge Crotty's revocation of bail without issuing an opinion.

**B.** Order Setting Conditions of Release

See "Order Setting Conditions of Release", 9/15/17, Dkt. #9, P.5-7

(p) participate in one of the following location restriction programs and comply with its requirements as directed.

(iii) Home Incarceration. You are restricted to 24-hour-a-day lockdown at your residence except for medical necessities and court appearances or other activities specifically approved by the court.

10.

(q) submit to location monitoring as directed by the pretrial

services office or supervising officer and comply with all of the

program requirements and instructions provided.

(s) "... AND IS TO REFRAIN FROM POSSESSING OR USING

A COMPUTER, COMPUTER NETWORK AND/OR INTERNET

ACCESS UNLESS SPECIFICALLY APPROVED BY PRE-TRIAL

SERVICES; PRE-TRIAL SERVICES SHALL USE ITS

DISCRETION AS TO WHEATHER (sic) THE DEFENDANT

SHOULD OR SHOULD NOT POSSESS ANY DEVICE WITH

INTERNET ACCESS WHILE OUT ON BAIL."


## V. SUMMARY OF ARGUMENT

Mr. Schulte's conditions of release were overbroad, excessive,

and unconstitutional; the district court violated the First Amendment

and Packingham v. North Carolina, 137 S. Ct. 1730 (2017), when it

11.

Ordered Mr. Schulte banned from not only the ENTIRE Internet, but ALL electronic devices. Mr. Schulte was also subject to 24/- GPS monitoring in violation of the Fourth Amendment and _Grady v. North Carolina_, 135 S. Ct. 1368 (2015). Finally, Mr. Schulte was held under house incarceration and prevented from leaving his apartment to work, assist in his own defense, or even attend religious services in violation of the First, Fifth, Sixth, and Eighth Amendments. The record failed to explain the necessity of such harsh conditions as required under 18 U.S.C. § 3142.

Mr. Schulte's revocation of release was unconstitutional; Mr. Schulte previously sought and received permission from pretrial services, who was authorized to make modifications to the court's order, to permit his roommate to access the Internet on his behalf. The district court decided to expand the already overbroad, unconstitutional release conditions ex post facto to ban not only the ENTIRE

12.

Internet and ALL electronic devices, but also ban third parties

from using the Internet or electronic devices on Mr. Schulte's

behalf; this new condition was applied retroactively after it was

violated and notwithstanding pretrial service's acquiescence to the reque

## VI. ARGUMENT

**A. The District Court imposed overbroad, excessive, and unconstitutional conditions of release that cannot legally be enforced**

"A fundamental principle of the First Amendment is that all

persons have access to places where they can speak and listen, and

then, after reflection, speak and listen once more. The Court has

sought to protect the right to speak in this spatial context. A basic

rule, for example, is that a street or a park is a quintessential forum

for the exercise of First Amendment rights. See Ward v. Rock Against

Racism, 491 U.S. 781, 796 (1989). Even in the Modern era,

13.

these places are still essential venues for public gatherings to celebrate some views, to protect others, or simply to learn and inquire.

"While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is Cyberspace — the 'vast democratic forums of the Internet' in general, Reno v. American Civil Liberties Union, 521 U.S. 844, 868 (1997), and social media in particular." Packingham v. North Carolina, 137 S. Ct. 1730, 1735 (2017).

**1.** Release conditions violated the First Amendment and Supreme Court precedent

The Supreme Court forcefully identified the right to access the Internet in Packingham and it suggested as much in Riley v. California, 573 U.S. 373 (2014). The District

14.

Court's order banning not only the ENTIRE Internet, but also ALL electronic devices violated the First Amendment and Packingham. In Packingham, the Supreme Court struck down as unconstitutional a North Carolina criminal statute that made it a felony for sex offenders to access certain social media websites— the statute was overbroad and violated the First Amendment. "Even with these assumptions about the scope of the law and the State's interest, the statute here enacts a prohibition unprecedented in the scope of First Amendment speech it burdens. Social media allows users to gain access to information and communicate with one another about it on any subject that might come to mind." Packingham at 1737. The Supreme Court recognized the First Amendment right to access the Internet, and particularly social media. "In sum, to foreclose access to social media altogether is to prevent the user from engaging in the

15.

legitimate exercise of First Amendment rights." Id.

Three months after this precedential case, the district Court completely ignored the Supreme Court and imposed even greater conditions of release on Mr. Schulte — the ban of the ENTIRE Internet and ALL electronic devices.

On January 16, 2019, the Second Circuit decided this very issue when it applied Packingham in United States v. Eaglin, 913 F.3d 88 (2d Cir. 2019). The substance of the Internet ban imposed on Eaglin is even broader in its terms, if not in its application, than that struck down in Packingham. Whereas the Packingham statute banned access only to certain social networking sites where minors may be present, such as Facebook and Twitter, the condition imposed on Eaglin prohibits his access to all websites. It therefore implicates the same First Amendment concerns that were at issue in Packingham: Eaglin has a

16.

First Amendment right to be able to email, blog, and discuss the issues of the day on the Internet while he is on supervised release." _Eaglin_, at 96. Mr. Schulte has that same right — the right to email, blog, and discuss issues of the day on the Internet ~~while he~~ There can be no question that the Supreme Court established this right and that the Second Circuit confirmed it— that the First Amendment Freedom of Speech extends to the Internet—and that the district court entirely disregarded this right.

Although _Eaglin_ was decided two years after Mr. Schulte's release and subsequent remand the Second Circuit has consistently rejected blanket Internet bans. See United States v. Peterson, 248 F.3d 79 (2d Cir. 2001) (per curiam); United States v. Sofsky, 287 F.3d 122 (2d Cir. 2002). Additionally, nearly every single circuit court of appeals has similarly rejected absolute Internet bans even where the defendant had used the computer for ill in

17.

his crime of conviction. See, e.g., United States v. Perazza-Mercado, 553 F.3d 65 (1st Cir. 2009); United States v. LaCoste, 821 F.3d 1187 (9th Cir. 2016); United States v. Freeman, 316 F.3d 386 (3d Cir. 2003) (rejecting Internet ban where defendant was convicted of receiving and possessing child pornography); United States v. Holm, 326 F.3d 872 (7th Cir. 2003) (same). United States v. Wiedower, 634 F.3d 490 (8th Cir. 2011) (same); United States v. Blair, 933 F.3d 1271 (10th Cir. 2019) (same). It is unassailable that banning a defendant's use of computers and Internet devices in totality violate Freedom of Speech.

The district court defied second circuit and Supreme Court precedent when it disregarded Packingham and issued a blanket Internet and electronics ban. Therefore, this Court should correct this mistake, uphold Eaglin, and grant the writ for habeas corpus: "We conclude that the record here does not support imposition of these sweeping

18.

prohibitions. To be sustained, a virtually categorical prohibition on a defendant's use of any device to access the Internet — a technology around which our society now unmistakably turns — must be carefully explained and robustly supported by the district court." *Eaglin*, at 91.

2. Release conditions violated the 'Least Restrictive Clause' and the record failed to explain the necessity of such harsh conditions in violation of 18 U.S.C. § 3142

The imposition of release conditions pending trial are statutorily similar to the imposition of conditions of supervised release. The district court must "make an individualized assessment when determining whether to impose a special condition [...] and state on the record the reason for imposing it." *United States v. Betts*, 886 F.3d 198, 202 (2 Cir. 2018)(Referencing sentencing). The Second Circuit has held as a general matter that a district court "may impose special conditions of supervised release

19.

that are reasonably related to certain statutory factors governing

sentencing, 'involve[ ] no greater deprivation of liberty than is

reasonably necessary' to implement the statutory purposes of sentencing

and are consistent with pertinent Sentencing Commission policy

statements." United States v. Myers, 426 F.3d 117, 123-24 (2d cir. 20

(quoting 18 U.S.C. § 3583(d)); See also 18 U.S.C. § 3142(c) as

it relates to § 3583(d), namely the restriction that the

conditions involve "no greater deprivation of liberty than is

reasonably necessary for" deterring criminal activity, protecting the

public, and promoting a defendant's rehabilitation. It is

unassailable that banning a defendant's use of computers and

Internet devices in totality impose greater deprivation of liberty

than reasonably necessary in contravention of both 18 U.S.C. §

3583(d)(2) and 18 U.S.C. § 3142(c)(1)(B).

20.

The instant case also resembles _Eaglin_ in that the record in both fail to explain the necessity of the restrictions or why less restrictive alternatives were unavailable: "The record also fails to reveal the District Court's basis for identifying a connection between the conditions and the likelihood of harm. The District Court's general reference to the conditions as being necessary to protect the community does not suffice, even on the background of _Eaglin's_ repeated infractions of the better-founded terms of supervised release. We must conclude, therefore, that, on this record, these conditions are substantively unreasonable because they are not reasonably related to the relevant sentencing factors and involve a greater deprivation of liberty than is reasonably necessary." _Eaglin_ at 95.

Likewise, the district court in the instant case does not explain how banning the ENTIRE Internet and ALL electronic devices is necessary to protect the community. Or why 24-hour

21.

house incarceration and GPS monitoring is necessary. There is literally no discussion at all about the necessity of these conditions or why less restrictive conditions would not "reasonably assure the [...] safety of any other person and the community" in accordance with 18 U.S.C. § 3142(g)(1)(B). In fact, to find danger, not only do you have to presume that Mr. Schulte is guilty of possessing child pornography, but you must also take the unsubstantiated leap and say that he is also likely to molest children. The Due Process Clause prevents both

### 3. Release conditions violated the Fourth, Fifth, Sixth, and Eighth Amendments

Mr. Schulte's right to access the Internet is greater than in Englin or in Packingham because he is pretrial and the Internet is a powerful tool to be used in his own defense. Is a defendant really expected to review all electronic discovery in printed form where he cannot conduct simple searches? Or that he cannot use Google to search similar

22.

Cases or search for the best defense attorneys? Or utilize powerful analysis and forensic capabilities to review the electronic discovery? The Internet is absolutely critical. Thus, in addition to a First Amendment right to access the Internet, Mr. Schulte has a Sixth Amendment right to the Internet and a complete defense. Besides the Internet, there are many discovery items such as forensic images that require a computer to view and analyze. Deprivation of electronic devices such as computers, which the Government and Federal prosecutors undoubtedly uses are debilitating to Mr. Schulte's ability to defend himself. It is outrageous that Mr. Schulte was banned from ALL electronic devices — which prevented him from reviewing any discovery. Even while incarcerated at the MCC Mr. Schulte had the ability to review electronic discovery on a personal laptop — it is absurd that this least restrictive measure could not have been adopted pretrial.

Mr. Schulte's release conditions also clearly violated the Fourth Amendment. The United States Supreme Court held in Grady v. North

23.

Cardina, 135 S. Ct. 1368 (2015), that GPS monitoring constitutes a search for the Fourth Amendment purposes. The 24-hour GPS location monitoring was an unreasonable, continuous search. For what purpose was the location monitoring? The Court found that Mr. Schulte was not a flight risk—why the constant, continual 24-hour monitoring? He was already detained under complete house incarceration!

These conditions of confinement were so excessive that Mr. Schulte was even unable to work. The importance of the Internet to find jobs, the importance of liberty to work, the importance of the Internet and electronic devices to assist in his own defense, the right and need to attend religious services—all of these critical aspects of livelihood and liberty were denied to Mr. Schulte. Just as the courts noted in the aforementioned cases the importance of finding jobs and working to satisfy release conditions post-trial, the ability to work and support one's self is just as important pretrial. Is Mr. Schulte supposed to incur debt with

24.

no ability to pay until inevitable bankruptcy? Then what? Federal prison because he can no longer afford to pay for his apartment? It is incontrovertible that these harsh conditions of confinement doomed Mr. Schulte to bankruptcy, completely ignored his First, Fourth, and Sixth Amendment rights guaranteed by the Constitution.

All these conditions violated substantive due process of the Fifth Amendment and the Excessive Bail Clause of the Eighth Amendment. Neither the complete ban of the Internet, the complete ban of all electronic devices, 24-hour GPS Monitoring, nor 24-hour house incarceration were "subject to the least restrictive condition, or combination of conditions, that [...] will reasonably assure the appearance of the person as required and the safety of any other person and the community." These overbroad, excessive conditions of release were not "narrowly tailored" as required by law, but rather, swept too broadly and severely encroached and eviscerated Mr. Schulte's liberty.

25.

## 4. The Government may not Suppress lawful Speech as the means to Suppress unlawful speech

"The government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter. The Constitution requires the reverse. '[T]he possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted.' The Overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." Ashcroft v. Free Speech Coalition, 535 U.S. 234, 255 (2002) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973)).

It appears that the district court viewed a total Internet ban as a necessary means of preventing Mr. Schulte from accessing Child pornography—even though Mr. Schulte has never accessed Child pornograph

26.

But the Internet restriction requiring Pretrial Services to monitor Mr. Schulte's Internet access was a less restrictive, viable option that was never even considered. Such a restriction would adequately protect the public from Mr. Schulte's potential misuse of the Internet while imposing a more reasonable burden on Mr. Schulte's First Amendment interest in accessing the Internet. See United States v. Browder, 866 F.3d 504, 512 (2d Cir. 2017)(holding that a condition of supervised release that imposed a "narrowly tailored" computer monitoring program on a defendant convicted of child pornography possession was not an excessive deprivation of liberty).

Here, the district court sought to limit Mr. Schulte's speech to prevent any future violations of the law—or to decrease the probability of a future crime. But, the government may not prohibit speech because it increases the chance an unlawful act will be committed "at some indefinite future time." Hess v. Indiana,

27.

414 U.S. 105, 108 (1973). See *Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001) ("The normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it.");

*Kingsley Int'l Pictures Corp v. Regents of Univ. of N.Y.*, 360 U.S. 684, 689 (1959) ("Among free men, the deterrents ordinarily to be applied to prevent crime are education and punishment for violations of the law, not abridgment of the rights of free speech.")

**B.** The District Court's revocation of bail was unconstitutional

Under 18 U.S.C. § 3148, the judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer —

(1) finds that there is —

(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

(B) clear and convincing evidence that the person has violated any

28.

other condition of release; and

(2) finds that—

(A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

(B) the person is unlikely to abide by any condition or combination of conditions of release.

**1.** Unconstitutional conditions of release are unenforceable

Since the conditions of release imposed upon Mr. Schulte were unconstitutional it was illegal to revoke his bail due to infractions of those unconstitutional conditions. If the courts released Mr. Schulte on the condition that he submit to be flogged every morning, it would be absurd for the courts to enforce this condition; similarly any conditions that violate the Constitution and Supreme Court are

29.

illegal and unenforceable.

    2. The district court expanded release conditions ex post facto

       Additionally, the district judge expanded the already overbroad, illegal release conditions ex post facto to include third parties. Mr. Schulte followed the district judge's bail conditions and requested confirmation from pretrial services, who had the authority to modify the conditions of bail, whether or not his roommate could access the Internet on his behalf; pretrial services consented that this was allowed. Four months later, however, the district court stated the release conditions banning the ENTIRE Internet and ALL electronic devices also applied to third parties despite no such condition in the ruling and notwithstanding pretrial services acquiescence to the request. He found Mr. Schulte violated these conditions ex post facto and ordered

30.

Mr. Schulte remarked.

THE COURT: [...] and I find that the defendant

violated the terms of the release conditions by

engaging in having his roommate access the computers

using very sophisticated Methodology. (Dkt #29, V8/18 p. 16)

Nowhere in the release condition does it state Mr.

Schulte cannot request that other people access the Internet

on his behalf. The District judge's assertion that the

already overbroad conditions banning the ENTIRE Internet and

ALL electronics also includes the ban of third parties is unfounded.

Indeed, such a ban would undoubtedly be punishment — which appears

to be the District Court's goal: to punish Mr. Schulte, not to

"protect the community." Under the District judge's interpretation

of his release condition, if Mr. Schulte asked someone what the

weather would be like the next day, asked the price of a stock,

31.

asked about a news article, asked about the latest ruling in this Court, or asked any other innocuous question that prompted an individual to use a computer or the Internet — Mr. Schulte's bail would be revoked. This is absurd. Regardless, it is incontrovertible that a district judge cannot modify release conditions and apply them ex post facto.

**3.** Pretrial Services consented to third party use of the Internet on Mr. Schulte's behalf

Since Mr. Schulte was under house incarceration, he was forced to find someone to help him buy groceries, take out the trash, pickup his mail and medication, pay bills, etc. The heavy, extremely expensive burden of house incarceration forced Mr. Schulte to find someone to perform those and other activities — luckily, Mr. Schulte's cousin agreed to assist and moved to New York City to live with Mr. Schulte and perform those

32.

Duties. Mr. Schulte's cousin initially stored his laptop and electronics outside the apartment; since the Court's order was not explicit regarding others accessing the Internet on Mr. Schulte's behalf to tend to his affairs, or others accessing the Internet in his presence, Mr. Schulte sought clarification through Pretrial Services. Mr. Schulte, Mr. Schulte's cousin, and Mr. Schulte's attorneys spoke with Pretrial Services—and eventually Mr. Schulte's cousin signed an affidavit on September 28, 2017 and was granted the ability to access the Internet on Mr. Schulte's behalf.

Pretrial Services acknowledged that the condition barring use of the Internet could not be punishment, and its purpose was to prevent the defendant from committing crimes. Since this threat was neutralized by a third party using the computer and/or Internet, it was perfectly reasonable for Mr. Schulte's cousin to access the Internet on his behalf to tend

33.

to his affairs. Therefore pretrial service's consent clearly contradicts any "clear and convincing evidence" that the terms of release were violated.

4. The district court's reliance on a new arrest outside federal jurisdiction to find "danger" was improper without at least permitting judicial proceedings for that case

Mr. Schulte's remand was based on his arrest in December 2017; after this arrest, Mr Schulte consented to remand on the condition that he be extradited to Virginia to face arraignment and initiate legal proceedings that would ultimately indicate the prosecution was malicious, vindictive, and fabricated. The Government consented, but immediately after transfer from state custody to federal custody, Virginia dropped the extradition, cancelled the scheduled arraignment, and filed a writ of detainer. If this wasn't a clear indicator of foul

34.

play, what would be?

The district court then improperly used this arrest against Mr. Schulte. There was literally no difference in the case between the time it was briefed to the district court at the first bail hearing in September and the arrest in December. Without permitting this case to proceed to arraignment, it would violate Due Process to use it against Mr. Schulte based on nothing more than the allegations alone. The Government succeeded in deadlocking Mr. Schulte — revoking his bail based on allegations that he could not challenge until he was granted bail. It is incontrovertible that this violates the Due Process Clause — the district court in the Southern District of New York has no jurisdiction over a crime committed in Virginia, no jurisdiction over the alleged crime itself, and therefore cannot possibly find "danger" based on nothing but unproven allegations that

35.

are legally presumed to be untrue. The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." Coffin v. United States, 156 U.S. 432, 453 (1895).

# VII. CONCLUSION

This court should find that the district court failed to acknowledge the First Amendment right to access the Internet as established in Packingham, failed to acknowledge the Fourth Amendment right to be free from unreasonable, constant GPS monitoring, failed to acknowledge the Sixth Amendment right to access the Internet and electronic devices to aid in preparing a defense, failed to acknowledge the Fifth and Eighth Amendment right to be free from excessive bail, failed to apply 18 U.S.C.

36.

§ 3142(c)(1)(B)'s Least Restrictive Clause, abused its discretion by failing to state on the record how a blanket Internet and electronics ban was reasonable and narrowly tailored considering other alternatives such as Internet monitoring were viable, and finally the district court erred when it sua sponte expanded the Internet ban to include all third parties ex post facto and improperly relied upon the Virginia arrest to find danger.

Hence, revocation of bail was clear, reversible error. This court should grant Mr. Schulte's petition for a writ of habeas corpus and release him pending trial. Mr. Schulte's trial court would still have the option to remand Mr. Schulte into prison due to the partial convictions, but this would then permit Mr. Schulte to proceed to sentence and file for an appeal.

Respectfully submitted,
Joshua Adam Schulte, pro se

_Jsh. Schulte_   10/11/12

Joshua Alan Schulte #79471054
MCC
150 Park Row
NY, NY 10007



ATTN: New pro se petition for writ of habe...
United States District Court
500 Pearl Street
NY, NY 10007

RECEIVED
OCT 3 0 2020
PRO SE OFFICE

USM·P3 SDNY